IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL LENOIR SMITH,

Plaintiff,

No. CIV S-05-1257 GEB KJM P

vs.

STATE OF CALIFORNIA, et al.,

Defendants.

ORDER AND

FINDINGS AND RECOMMENDATIONS

_________________________________/

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. Defendants are either employees or former employees of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff alleges his civil rights were violated because he was not provided adequate health care and he was mistreated during institutional lockdowns. Several matters are before the court.

I. Plaintiff's Request For "Ruling As A Matter of Law . . ." (Docket #45)

On August 22, 2007 plaintiff filed a motion titled "request for a ruling as a matter of law pursuant to collateral estoppel." Essentially, plaintiff asserts he is entitled to judgment because he thinks case law supports a judgment based on his interpretation of the facts. This is not an appropriate basis for the court to grant judgment on collateral estoppel grounds. In order to obtain judgment based upon collateral estoppel, plaintiff would have to show, among other

things, that defendants, or parties with whom they were in privity, had a full and fair opportunity to litigate the issues upon which plaintiff seeks judgment. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979). Plaintiff has not made this showing. While he references one other case filed in this court, Smith v. Felker, Civ S-04-1594 LKK DAD, he himself volunteers that he dismissed that action, precluding the possibility of its providing a basis for collateral estoppel.[1] Plaintiff's motion should be denied.

II. Video Tape Request (Docket #53)

Plaintiff asks that the court order defendants to provide the court with a copy of a videotape depicting plaintiff being physically extracted by California State Prison Solano (CSPS) staff from his cell. However, plaintiff fails to assert any valid reason why the court should order defendants to provide the court with a copy of this videotape. The videotape does not appear to have been the subject of any discovery request, and it is not necessary to resolve the motion addressed above for "ruling as a matter of law," despite plaintiff's suggestion to the contrary. Therefore, plaintiff's request will be denied.

III. Defendants' Motion For Summary Judgment Motions (Docket #55)

A. Summary Judgment Standards

Defendants seek summary judgment with respect to all of plaintiff's remaining claims remaining in this case. Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

/////

/////

/////

---

[1] The complaint also references another case, Smith v. Hicks, Civ S-01-1766 DFL JFM, which was dismissed with prejudice, without objection from plaintiff. See Am. Compl. at 3.

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On November 16, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

B. Eighth Amendment Claim (French)

With respect to plaintiff's Eighth Amendment claim against defendant French, defendants argue plaintiff failed to exhaust available administrative remedies before filing suit as he is required to do under 42 U.S.C. § 1997e(a). According to plaintiff's amended complaint, signed under penalty of perjury, the acts performed by defendant French that form the basis of plaintiff's Eighth Amendment claim did not occur until after June 29, 2005. Am. Compl. at 7-8, 11-12.[2] Because this action was commenced on June 23, 2005, plaintiff could not have exhausted administrative remedies with respect to his claim against defendant French before filing suit. Therefore, the court will recommend that plaintiff's claim against defendant French be dismissed.[3] Furthermore, the court will not look to acts occurring after this action was filed in support of plaintiff's other remaining claims.

C. Eighth and Fourteenth Amendment Claims (Woodford, Hickman, Armoskus, Runnels)

The remainder of plaintiff's claims arise from the fact that plaintiff was subjected to the restrictive conditions of "lockdown" confinement at High Desert State Prison (HDSP), from December 26, 2003 through March 2004 and from January 27, 2005 through June 2005. Am. Compl. at 6. Plaintiff alleges that during these periods of time he was locked in his cell for most of the day, given limited access to showers and denied any recreation outside of his cell. Id. at 4, 9. Plaintiff alleges he was subjected to these more restrictive conditions because he is African American, and seeks damages.[4] Id. at 4-8. On September 28, 2006 the court found that

---

[2] Page references are to the page numbers assigned by the court's CM/ECF system.

[3] According to the Ninth Circuit Court of Appeals, a finding that an inmate-plaintiff has failed to exhaust administrative remedies is not a judgment on the merits of his claims. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Therefore, a court should not grant summary judgment after such a finding. Id. Instead, courts should dismiss the plaintiff's claims without prejudice. Id. at 1120.

[4] Defendants seek summary judgment with respect to plaintiff's claims for injunctive relief. Mot. at 29-30. However, plaintiff does not seek injunctive relief in his amended

the facts alleged by plaintiff in his amended complaint state claims upon which relief can be granted under the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment.

1. Woodford

Defendants point to evidence indicating that defendant Woodford, who was the Director of CDCR between 2005 and 2006, had no involvement in the decisions that resulted in plaintiff being locked down during the periods identified above. Defs.' Statement of Undisputed Facts (SUF), Ex. A ¶ 5. Plaintiff points to no evidence indicating Woodford's involvement. Essentially, plaintiff argues that because defendant Woodford was the Director of CDCR, she was responsible for the acts of her subordinates. See, e.g., Opp'n at 2, 8, 13, 30. But, a government official can only be held liable as a supervisor if the supervisor implemented a policy so deficient that the policy itself is a repudiation of Constitutional rights and is the "moving force" behind the Constitutional violation. See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). Nothing suggests that is the case here. Defendant Woodford is entitled to summary judgment.

2. Hickman

Defendants have presented evidence indicating that during the relevant time period defendant Hickman had no "authority or control over High Desert State Prison," SUF, Ex. B ¶¶ 2, 5, and that he played no role in the lockdowns that occurred in the relevant time frame. Id. ¶ 5. Plaintiff fails to point to any evidence contradicting this. Therefore, the court will recommend that defendant Hickman be granted summary judgment.

3. Armoskus

Defendant Armoskus either was an Associate Warden at HDSP or did not work at HDSP for most of the relevant time frame. SUF, Ex. D ¶¶ 2-4. Defendants point to evidence

---

complaint. See Am. Compl. at 4.

indicating that Armoskus had no authority to commence or end the lockdowns at issue. Id. ¶ 8; see also SUF, Ex. C ¶ 5. Plaintiff fails to offer any evidence in response, or present anything indicating Armoskus somehow violated plaintiff's Constitutional rights. Plaintiff does argue that Armoskus had personal knowledge of the lockdowns and failed to intervene. Opp'n at 16. He also cites and quotes from regulations and CDCR documents that he says define Armoskus's duties in a way that make him responsible for the conditions to which plaintiff was exposed. Id. at 10-13. Plaintiff's bare arguments are insufficient to meet the burden shifted to him by Armoskus's showing. Therefore, the court will recommend that Armoskus be granted summary judgment.

4. Runnels

Defendant Runnels was the Warden at HDSP during all relevant periods of time. SUF, Ex. C ¶ 2. Plaintiff asserts that Runnels initiated the lockdowns at issue, which resulted in the claimed violations of plaintiff's Eighth Amendment rights and right to equal protection of the laws. Am. Compl. at 5.

The denial of fresh air and regular outdoor exercise constitutes cruel and unusual punishment in violation of the Eighth Amendment, unless "inclement weather, unusual circumstances, or disciplinary needs" make the provision of such exercise impossible. Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979). In Spain, in the face of a five-month deprivation of exercise, the Ninth Circuit held that "outdoor exercise [for] one hour per day, five days a week" was sufficient to satisfy the Eighth Amendment. Id.; see also Allen v. Sakai, 48 F.3d 1082 (9th Cir. 1994) (six-week deprivation of exercise violated Eighth Amendment, despite logistical difficulties); cf. Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir. 1980) (finding no Eighth Amendment violation in temporary denial of exercise during lock-down instituted following incidents of gang violence, when exercise equivalent to that prescribed by Spain allowed again after one month).

/////

Defendants assert several reasons why failing to provide plaintiff with fresh air and outdoor exercise during the more than three- and five-month intervals of time identified above was justifiable as a necessary security measure. Defendants point to evidence showing that intelligence obtained by prison staff indicated that African-American inmates had planned to attack staff or that inmate-on-inmate violence was about to occur. SUF, Ex. D ¶ 17 & Ex. E at 1-2. While these facts may have justified some modification in regular inmate programming, they do not support this court's finding as a matter of law that defendants had no choice but to deprive plaintiff of fresh air and outdoor exercise for the periods of time claimed. In particular, defendants fail to point to anything suggesting they could not provide the minimum amount of outdoor time identified in Spain despite the threat of violence. For these reasons, the court will recommend that defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claim against defendant Runnels be denied.

Defendants also assert defendant Runnels is immune from suit with respect to plaintiff's Eighth Amendment claim under the doctrine of qualified immunity. Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To survive a motion for summary judgment based on qualified immunity, the plaintiff must show there are facts in the record sufficient to establish that defendants' conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). If no constitutional violation occurred, defendants are immune from liability. Saucier, 533 U.S. at 201. If a constitutional violation occurred, the court must further inquire "whether the right was clearly established." Id. "If the law did not put the [defendants] on notice that [their] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 202.

/////

As indicated above, there are facts before the court that could support a determination that defendant Runnels violated plaintiff's Eighth Amendment rights by failing to provide him with sufficient fresh air and outdoor exercise. Furthermore, plaintiff's rights to fresh air and outdoor exercise were clearly established at the time defendant Runnels allegedly violated those rights. More than a decade earlier, the Ninth Circuit had decided Hayward and Spain and defined certain parameters for prison officials to observe in ensuring that inmates' Eighth Amendment rights were not violated. As indicated above, there is a genuine issue of material fact as to whether the actions of defendant Runnels fell outside those parameters.

With respect to plaintiff's denial of equal protection claim, any race-based classification imposed by the government violates the Equal Protection Clause of the Fourteenth Amendment, unless the government can show that the classification is narrowly tailored and it furthers a compelling government interest. Johnson v. California, 543 U.S. 499, 505 (2005).[5]

The arguments made by defendants in support of granting defendant Runnels summary judgment with respect to plaintiff's equal protection claims are vague. Defendants assert, to wit, that the lockdowns at issue "(1) were necessary to protect the lives of inmates and correctional staff; (2) did not last any longer than necessary to protect the lives of inmates and correctional staff; and (3) were not intended to prejudice or harass anyone." Mot. at 24:8-11. But the facts defendants point to in support of these arguments are simply not sufficient to establish defendants' very broad assertions as a matter of law. See SUF, Ex. C ¶¶ 3-12, 15 & Ex. D ¶¶ 6-7, 9-16, 28; see also id., Ex. D ¶¶ 18-19, 21-25 & Ex. E at 3-17, 20-60, 69-88.[6] In

---

[5] Defendants suggest they are entitled to summary judgment with respect to plaintiff's equal protection claims because plaintiff has not shown he was intentionally discriminated against. However, it is not disputed that plaintiff's race was considered in deciding whether to place him on lockdown. See, e.g., SUF, Ex. D ¶ 17 & Ex. E at 1-2. Therefore, he does not have to prove discriminatory intent. Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004).

[6] While the second set of record cites set forth here contains information particularized to events at HDSP, none of the information pertains to plaintiff's individual actions during the relevant time period. For example, while some records identify a specific concern with "black inmates associated with the Crips," see, e.g., SUF, Ex. E at 19, nothing in the record suggests

particular, the facts do not support a finding that locking plaintiff down because he is African American was narrowly tailored to the security problems faced by defendant Runnels at HDSP; defendants fail to show facts indicating they could not have classified the inmates through means other than race to further the objectives of the lockdowns. Defendants do, however, point to undisputed evidence indicating that all HDSP inmates were locked down between January 27 and May 3, 2005, not just African American inmates. See SUF, Ex. D ¶¶ 21-27; id., Ex. E at 21-44. Therefore, defendant Runnels should be granted summary judgment with respect to any denial of equal protection claims arising during this period of time.

Finally, defendants argue that defendant Runnels is immune from plaintiff's equal protection claim under the doctrine of qualified immunity. As indicated above, there are facts before the court that could establish defendant Runnels' violation of plaintiff's right to equal protection of the law because plaintiff was subjected to more restrictive conditions of confinement than other inmates, based on his race. Defendant Runnels is only entitled to immunity from plaintiff's equal protection claims if he can show that the law under which plaintiff's equal protection claims arise was not clearly established at the time of the alleged violations. Saucier, 533 U.S. at 201.

As indicated above, the current state of the law with respect to racial discrimination in United States prisons is that any race-based classification violates the Equal Protection Clause of the Fourteenth Amendment unless the government can show that the classification is narrowly tailored and furthers a compelling government interest. Johnson, 543

---

plaintiff has been identified as a Crips associate. Certain memoranda also document interviews or concerns with respect to certain inmates, but the names of those inmates have been redacted. Id., Ex. E at 34, 43, 45, 47, 54. In his deposition, lodged with the court, plaintiff does testify that he had the unsolicited protection of a prison group known as the "Black Guerilla Family" before the time period relevant to this action; he provides this testimony after stating that he has no involvement with prison gangs. See also id., Ex. I at 109:3-19. While defendants also suggest that plaintiff made threatening remarks to a prison guard, the record cite they provide does not support the representation, and the date of the purported remarks, July 29, 2005, is outside the time frame of the challenged lockups. See SUF No. 62; cf. SUF, Ex. E at 13-20.

U.S. at 505. Johnson was decided in February 2005. Therefore defendant Runnels is not entitled to qualified immunity in the face of plaintiff's claim he was denied equal protection between May 5 and June 2005.

With respect to whether plaintiff was denied equal protection between December 2003 through March 2004, the court cannot find that the standard articulated in Johnson was, for this time period, clearly established. Johnson was decided following the grant of a writ of certiorari with respect to the Ninth Circuit's opinion in Johnson v. California, 321 F.3d 791 (9th Cir. 2003). There, the Ninth Circuit held the prison's decision based upon an inmate's race would be upheld as long as the decision was reasonably related to legitimate penological interests. Id. at 798.

Defendants point to evidence indicating that all African-American inmates residing in B-Facility on December 29, 2003 were subjected to lockdown conditions because B-Facility staff had received anonymous notes indicating African-American inmates intended to assault staff with weapons. SUF, Ex. D ¶ 17. Between December 2003 and April 2004, all of HDSP was searched for weapons and B-Facility staff and inmates were interviewed. Id. ¶ 18. On April 6, 2004 prison officials began to lift the lockdown and by April 22, 2004 all inmates were returned to regular programming. Id. ¶ 19. Plaintiff fails to point to anything suggesting these representations are not accurate.

Based on this record, and the state of the law at the time, the purpose of the 2003-2004 lockdown -- to protect staff and inmates from violence and identify those who might commit violence -- was legitimate. Locking down African-American inmates in B Facility in December 2003 was reasonably related to that objective. What is not clear is whether continuing the lockdown for a period of up to four months was reasonable, as the evidence before the court does not support such a conclusion as a matter of law. Therefore, defendant Runnels is not entitled to qualified immunity on plaintiff's equal protection claim arising out of plaintiff's being locked down between December 2003 and March 2004.

IV. Plaintiff's Request For A Settlement Conference (Docket #67)

Plaintiff has requested that the court hold a settlement conference. Good cause appearing, plaintiff's request will be denied without prejudice to renewal after the district court judge assigned to this case rules on defendants' motion for summary judgment.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's "request for the court to order defendants to provide a copy of the video taped cell extraction to the court" (docket #53) is denied.

2. Plaintiff's request that the court hold a settlement conference (docket #67) is denied without prejudice to renewal after the district court judge assigned to this case rules on defendants' motion for summary judgment.

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's request for "a ruling as a matter of law . . ." (docket #45) be denied.

2. Defendants' motion for summary judgment (docket #55) be granted in part and denied in part as follows:

A. Granted with respect to plaintiff's Eighth Amendment claim against defendant French, resulting in plaintiff's claim being dismissed without prejudice for failure to exhaust administrative remedies prior to filing suit and resulting in defendant French being dismissed from this action.

B. Granted with respect to plaintiff's claims against defendants Hickman, Woodford and Armoskus, resulting in their being dismissed from this action.

C. Granted with respect to plaintiff's equal protection claim against defendant Runnels resulting from prison lockdowns occurring between January 27 and May 3, 2005.

/////

D. Denied with respect to plaintiff's equal protection claim against defendant Runnels resulting from a prison lockdown occurring between December 2003 and March 2004.

E. Denied with respect to plaintiff's equal protection claim against defendant Runnels resulting from a prison lockdown occurring between May and June 2005.

F. Denied with respect to plaintiff's Eighth Amendment claims against defendant Runnels.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 24, 2008.

U.S. MAGISTRATE JUDGE

1
smit1257.57